## FREDERICK B. SUPPIGER *et al.*

### *v.*

### TIMOTHY GRUAZ.

*Filed at Mt. Vernon March 31, 1891.*

1. INSOLVENT DEBTORS—*contingent interest—whether to participate in the fund—the statute construed.* The direction in section 13 of the Assignment act, that "all debts and liabilities" of the assignor "shall be paid *pro rata* from the assets," etc., entitles a party whose right depends upon a contingent liability of the assignor, to share in such assets after the happening of the contingency.

2. SAME—*time of exhibiting claims—limitation—the statute construed —section 10 of the Voluntary Assignment act.* Section 10 of the act relating to assignments by debtors for the benefit of creditors, which provides that "all creditors who shall not exhibit his, her or their claim within the term of three months from the publication" of the notice required by section 2 of the same act, "shall not participate in the dividends until after the payment in full of all claims presented within said time and allowed by the court," is a statute of limitation operating upon the remedy.

3. This section requires all who are creditors of the insolvent at the time of the assignment to present their claims within three months, whether they be due or not. But the statute evidently has reference to then existing creditors, and not to such persons as may, on the happening of a contingency, afterward become creditors.

4. The act contains no provision barring those who may become creditors after the expiration of the three months' notice. As to such persons it is silent, and the court is not disposed to extend a statute of limitations to cases which do not fall within its terms, especially when a construction of that character would work manifest injustice to one who has done all in his power to observe the requirements of the statute.

5. The obligee in a replevin bond does not become a creditor of the obligor until the termination of the replevin suit by judgment against the plaintiff for the return of the property. Before that, the obligor's liability is contingent, and not enforcible by action, or by filing the claim against the estate in the hands of an assignee.

6. In this case, A recovered a judgment against B, and had his execution levied on certain personal property. On May 10, 1884, C & Co. replevied the goods from the sheriff, to whom the usual bond was given. In May, 1885, C & Co. made an assignment for the benefit of their creditors, and the assignees, on May 20, 1885, gave the requisite notice for

the presentation of claims against the insolvent estate. After the replevy was made, C & Co. leased the property to E & Son, in whose possession it remained until April 9, 1885, when it was destroyed by fire without the fault of C & Co. At the March term, 1889, of the circuit court, C & Co. dismissed the replevin suit, and a return of the property was ordered by the court on April 1, 1889. A first presented his claim to the assignees, and it was filed August 6, 1889, in the county court, at which time three dividends had been paid to the creditors: *Held,* that A's claim was not barred by reason of its not having been exhibited within three months after the notice for the presentation of claims, and that he had a right to share in the assets of the assigned estate.

7. LIMITATIONS—*when the statute begins to run.* A statute of limitations operates upon the remedy only after a cause of action has accrued.

8. REPLEVIN BOND—*liability—loss or destruction of the property replevied.* The accidental destruction of goods wrongfully replevied will not discharge the liability of the plaintiff in the replevin suit to make return of the property when so ordered, and can not be set up in defense to an action on the replevin bond.

9. One who wrongfully takes the property of another, though under a valid writ of replevin, can not shield himself from liability for the value of the same on the ground that after such taking the property has been destroyed by inevitable accident.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. W. H. SNYDER, Judge, presiding.

The facts of this case, briefly stated, are as follows: Timothy Gruaz, defendant in error, obtained a judgment against the Highland Mechanical Works for $5647.10, at the March term of the Madison county circuit court, upon which an execution was issued, and levied on certain personal property. On the 10th of May, 1884, Ryhiner & Co. replevied this property from the sheriff, giving bond, in the usual form, in the penal sum of $4000. The replevin suit was continued, from term to term, until the October term, 1888, when the venue was changed (on an application made by Ryhiner & Co. prior to their assignment) to Jersey county, and at the March term of said court the replevin suit was dismissed by the plaintiffs, and a writ of *retorno habendo* ordered. The writ was issued, and returned no property found.

. .In May, 1885, Ryhiner & Co. made an assignment to the plaintiffs in error, for the benefit of their creditors. Notice was given by the assignees to the creditors of said estate to present their claims, as required by law, the first publication of said notice appearing on the 20th day of May, 1885. The name of Gruaz does not appear in the schedule of liabilities attached to the deed of assignment, nor in the list of those who had claimed to be creditors of said estate, nor was any notice sent to him by the assignees.

The claim in controversy was first presented to the assignees April 1, 1889, and was first filed in the county court August 6, 1889, at which time three dividends had been paid to the creditors of said estate. After the property was replevied by Ryhiner & Co. it was leased by them to Ellison & Son, in whose possession it remained until April 9, 1885, when it was destroyed by fire, without the fault or negligence of Ryhiner & Co. Plaintiffs in error, as assignees, and also as creditors, filed exceptions to the claim of defendant in error, which were sustained by the county court, and the payment of the claim postponed until the payment in full of all other claims filed and allowed, but on appeal the circuit court allowed the claim, and directed the assignees to pay to the claimant, not only the dividends thereafter declared, but the same dividends that had theretofore been paid to other creditors. This judgment the Appellate Court affirmed, and the case is now brought to this court by writ of error.

· Messrs. Krome & Hadley, for the plaintiffs in error:

By the terms of section 10 of the Assignment act defendant in error is barred from participating in the assets of the estate until other claims presented within the time provided, and allowed by the court, have been paid in full. *In re Holt,* 45 Iowa, 30; *McKindley* v. *Nourse,* 67 id. 119; *Lumber Co.* v. *Meyer,* 74 id. 403; *Loomis* v. *Griffin,* 78 id. 482; *Suppiger* v. *Seybt,* 23 Ill. App. 468.

The reason of this statute is the same as that requiring ·creditors of deceased persons to exhibit their claims within two years. *People* v. *White*, 11 Ill. 341; *Bank* v. *Morehead*, 38 N. J. Eq. 493; *In re Holt*, 45 Iowa, 80; *Stone* v. *Clarke*, 40 Ill. 441.

Defendant in error has no just claim against this estate, for the reason that the property replevied was destroyed during the pendency of the replevin suit, without the fault of the ·obligees on this bond. *Bobo* v. *Patton*, 6 Heisk, 172.

The principle is, that if a bond or obligation possible of performance at the time of execution, becomes impossible by the act of God, or of the law, or of the obligee himself, the obligation will be saved. *Moore* v. *Crockett*, 10 Hun, 365; *Morely* v. *Baker*, 2 Sneed, 367; *Green* v. *Smith*, 4 Cal. 440; *Bryan* v. *Spurgin*, 5 Sneed, 685.

Messrs. WISE & DAVIS, for the defendant in error:

A contingent claim, which is not due prior to the three months' limitation of time within which to present claims to the assignee of an assigned estate, is not barred by statute, the rule in this case being the same as that requiring creditors ·of deceased persons to exhibit their claims within two years after the grant of letters of administration. *Dugger* v. *Oglesby*, 99 Ill. 405; *Payson* v. *Haddock*, 8 Biss. 293; *Burton* v. *Lock-ert's Exrs.* 9 Ark. 416; *Miller* v. *Underwood*, 8 Mo. 176; *Finney* v. *State*, 9 id. 227; *Jones' Exrs.* v. *Lightfoot*, 10 Ala. 26; *Pendleton* v. *Phillips*, 4 Day, 476; *Neil* v. *Cunningham's Exrs.* 2 Port. 171; Woerner on Am. Law of Administration, secs. 394, 578.

Ryhiner & Co. took the property wrongfully. A wrongful taker of property, when called upon to surrender it, can not make the defense that he is unable to deliver the property through death, accident, or otherwise. Wells on Replevin, secs. 600-602; *Suydam* v. *Jenkins*, 3 Sandf. 644; *Carroll* v. *Early*, 4 Bibb, 270; *Welch* v. *Stiles*, 47 Iowa, 167; *Brown* v.

*Johnson,* 45 Cal. 76; *White* v. *Ross,* 5 St. & P. 123; *Skipper*
v. *Hargrove,* 1 Martin, 76; *Austin's Exrs.* v. *Jones,* Gil. 341;
*Scott* v. *Hughes,* 9 B. Mon. 106; *Betts* v. *Taylor,* 8 Port. 575;
*Bell* v. *Pharr,* 7 Ala. 813; 2 Sedgwick on Measure of Damages, (7th ed.) 429.

Mr. Justice Craig delivered the opinion of the Court:

Plaintiffs in error rely upon two grounds to reverse the judgment of the Appellate Court: First, that the claim is barred by section 10 of the Assignment act; and second, that the property replevied was leased by Ryhiner & Co. to Ellison & Son, and was destroyed by fire while in their possession, without the fault or negligence of Ryhiner & Co.

Section 2 of the act concerning voluntary assignments provides that the assignee "shall forthwith give notice thereof by publication in some newspaper, which publication shall be continued six weeks, and shall forthwith send a notice thereof by mail to each creditor of whom he or they shall be informed, directed to their usual place of residence." Section 10 provides that "all creditors who shall not exhibit his, her or their claim within the term of three months from the publication of notice as aforesaid, shall not participate in the dividends until after the payment in full of all claims presented within said time and allowed by the court."

It will be observed that at the time the assignment was made and the notice given by the assignees, the defendant in error was not a creditor. The property which he levied upon by execution had been replevied by Ryhiner & Co., but whether he would ultimately have a debt or claim against that firm depended upon a contingency. If he defeated them in the action, and they failed to return the goods and respond in damages for the taking, then he would become a creditor, otherwise he would not. It was therefore impossible for defendant in error to present his claim within three months after the pub-

lication of the notice. If, therefore, his claim is now barred, he will be deprived of sharing with other creditors in the assets of the insolvent, when, at the same time, he has exercised all the diligence which he could exercise to present his claim to the assignees. It is plain that a construction of this character is contrary to the entire scope and spirit of the act, as the act, in express terms, prohibits a preference among creditors, as will be seen by an examination of section 13. That section declares: "Every provision in any assignment hereafter made in this State, providing for the payment of one debt or liability in preference to another, shall be void; and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." The defendant in error, at the time of the assignment, did not have a debt, but there was a liability. True, the liability was a contingent one, but nevertheless it was a liability, and as such, by the language of the section, entitled to a share in the assets.

The section of the statute relied upon by plaintiffs in error no doubt requires all who may be creditors at the time of the assignment to present their claims within three months, whether the claims may be due or not due; but the section of the statute evidently has reference to existing creditors, and not to such persons as may, in a contingency, afterwards become creditors. The act contains no provision barring those who may become creditors after the expiration of the three months' notice. As to such persons it is silent, and we are not inclined to extend a statute of limitations to cases which do not seem to fall within its terms—especially when a construction of that character would work a manifest injustice to a person who has done all in his power that he could do to observe the requirements of the statute in order to protect his claim.

The statute in question is similar to a statute in force in this State requiring claims against the estate of a deceased person to be exhibited to the county court within a specified

time, otherwise such claims are barred; and the construction which may be placed on the one statute, may, upon principle, be applied to the other. That statute provides that all de- mands against an estate not exhibited to the county court within two years from the granting of letters of administration shall be forever barred, except as to subsequently discovered estate not inventoried or accounted for by the executor or ad- ministrator. The construction of this statute was before us in *Dugger* v. *Oglesby*, 99 Ill. 410, where the claim presented for allowance after the expiration of two years was not an existing claim at the time letters of administration were issued. It is there said: "All the property, both real and personal, belonging to the estate, was inventoried, so that there were no subsequently discovered assets. The eviction did not take place until in 1874. Thus the cause of action did not in fact, accrue until long, and more than two years, after the death of the ancestor and the granting of letters of administration and the settlement of his estate. The cause of action here is not a demand which could have been exhibited to the court, proved, or allowed against the estate of Dugger any time within two years after the granting of administration on his estate, it not accruing until afterwards. We are of the opinion the limit- ation of the statute does not apply to the case."

In other States where statutes exist barring claims against the estates of deceased persons unless presented within a cer- tain time, it has been held that such statutes do not control demands which may accrue after the period of limitation has expired. *Neil* v. *Cunningham*, 2 Porter, (Ala.) 171; *Jones* v. *Lightfoot*, 10 Ala. 26; *Burton* v. *Lockerts*, 9 Ark. 416; *Miller* v. *Woodward*, 8 Mo. 176.

The section of the statute relied upon can not be regarded otherwise than as a statute of limitations. Such statutes operate upon the remedy, and it would be a strange doctrine to hold that the remedy was gone before a right of action had arisen. A cause of action must have an existence before it

can be barred. Here the defendant in error had an inchoate
right, but that right never ripened into a subsisting cause of
action until long after the Statute of Limitations had run
against claims existing at the time of the assignment and at
the time of the publication of the notice.

*Stone* v. *Clarke's Admrs.* 40 Ill. 412, has been cited as hold-
ing a contrary view. What was said in that case, however,
was, in effect, overruled in the later case of *Dugger* v. *Oglesby,*
*supra,* and the later case must control.

*In re Holt,* 45 Iowa, 30, *McKinley* v. *Morse,* 67 id. 119,
*Lumber Co.* v. *Meyer,* 74 id. 403, and *Loomis* v. *Griffin,* 78 id.
482, have also been cited as authority sustaining the position
of plaintiffs in error. These cases all hold, under a statute of
Iowa a creditor is bound to file his claim with the assignee
within three months next after the first publication of notice
of the assignment, but in all the cases the debts sought to be
presented after the expiration of the time provided by the
statute were due and subsisting debts at the time the notice
was published, and hence they are distinguishable from the
case under consideration.

As to the second point relied upon but little need be said.
Ryhiner & Co. took the property under a writ of replevin.
They kept the action pending in court several years, and then
dismissed their action, and a writ of *retorno habendo* was
awarded by the judgment of the court. By the judgment of
the court the taking and detention of the property was wrong-
ful, and we are aware of no principle under which a wrongful
taker of property can shield himself from liability on the
ground that after the wrongful taking the property has been
destroyed by accident. In *Suydam* v. *Jenkins,* 3 Sandf. 644,
in discussing this question, it is said: "We have seen the de-
fendant in trover or trespass is in all cases responsible for
the value of the property when taken or converted, and cer-
tainly it has never been supposed that he can discharge him-
self from this responsibility, in whole or in part, by showing

that the property has been destroyed or injured by inevitable accident after he had obtained possession. A plaintiff who, without right or title, has seized the property of another by writ of replevin, is as much a wrongdoer as a defendant in trover. No reason can be given why his liability should be less extensive; and, in fact, where the replevin suit is terminated, although he can not be treated as a trespasser, he may be sued in trover, at the election of the defendant." (See, also, *Carroll* v. *Early*, 4 Bibb, 270; *Welch* v. *Stiles*, 47 Iowa, 167; *Scott* v. *Hughes*, 9 B. Mon. 104; *Yates* v. *Fassett*, 5 Denio, 21.) In *Scott* v. *Hughes*, *supra*, it is said: "We are unable to perceive any good reason why a party, who, of his own mere will, avails himself of the authority of law to seize and detain the property of another, should not be held to the same responsibility as a bailee who comes rightfully into possession, but wrongfully detains."

Plaintiffs in error have cited *Babo* v. *Patton*, 6 Heisk. 172, and *Mosby* v. *Baker*, 2 Sneed, 367, (decisions of the Supreme Court of Tennessee,) which seem to hold a contrary doctrine. But these cases are opposed to the current of authority in the different States, and we are not inclined to follow the rule there established. Ryhiner & Co. took and detained the property without a valid claim, and in doing so they acted at their peril, and the destruction of the property by fire while in the possession of Ellison & Son, to whom it was leased by Ryhiner & Co., does not release them from the liability they assumed to return the property or respond in damages for a failure to do so.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*