Evans et al. v. Illinois Surety Co., 220 Ill. App. 199.

# H. H. Evans et al., v. Illinois Surety Company. State of Ohio, Claimant, Appellant, v. James S. Hopkins, Receiver of Illinois Surety Company, Appellee.

## Gen. No. 25,686.

1. CORPORATIONS, § 557*—*jurisdiction to appoint receiver in voluntary proceeding.* Independently of statute, a court of chancery is without jurisdiction to appoint a receiver for a corporation upon a bill and petition which is essentially voluntary by the parties to it, consisting of the stockholders and the corporation, without bill or process as against creditors.

2. RECEIVERS, § 22*—*authority to terminate contract.* A receiver for a surety company appointed under the Act of July 1, 1874, Hurd's Rev. St. 1917, ch. 73, sec. 2, p. 1680 (J. & A. ¶ 6682), could not terminate the contracts of the company as of the date of his appointment, without the consent or acquiescence of the other parties to the contract, and his mere appointment would not have the effect of terminating the contracts of the company.

3. CORPORATIONS, § 567*—*appointment of receiver as terminating contracts.* The provisions of section 12 of the General Act concerning corporations, Hurd's Rev. St. 1917, ch. 32, p. 701 (J. & A. ¶ 2429), that dissolution shall not take away or impair any remedy given for any liabilities incurred previously to its dissolution; of section 4 of the Act of July 1, 1874, Hurd's Rev. St. 1917, p. 1680, ch. 73 (J. & A. ¶ 6684), providing that corporations shall continue for 2 years but not for the purpose of continuing business, and of section 6 of chapter 32, Hurd's Rev. St. 1917, p. 740 (J. & A. ¶ 2548), requiring a deposit with the superintendent of insurance, are inconsistent with the theory that the filing of a bill, appointment of a receiver and the issuance of an injunction restraining the corporation from doing further business should cancel all contracts outstanding on which causes of action had not then accrued.

4. CORPORATIONS, § 572*—*fixing time for exclusion of claims on insolvency.* Under the statutes relating to the dissolution of insolvent insurance companies, an order may not be made fixing a time for the exclusion of claims at less than 2 years from and after the date of the dissolution of the corporation.

5. CORPORATIONS, § 588*—*what claim should be allowed on insolvency.* In proceedings for the dissolution of an insolvent surety

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

company, a claim of a sister State upon the bond of a contractor who defaulted subsequently to the appointment of a receiver, should be allowed.

6. CORPORATIONS, § 572*—*when claims prematurely filed on insolvency.* Claims presented by a State against an insolvent surety company upon bonds of contractors issued by such company, but upon which no default had occurred, were prematurely filed.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded with directions. Opinion filed November 30, 1920.

PRATT & ZEISS, for appellant; JOHN G. PRICE and WILLIAM J. MEYER, of counsel.

A. J. HOPKINS, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

April 19, 1916, a bill and petition were filed in the superior court of Cook county by fifty-four stockholders of the Illinois Surety Company. These set up that the corporation was organized under the laws of the State of Illinois for the purpose of doing a surety business, but that it was, in fact, insolvent. The bill prayed for the appointment of a receiver, and that upon a final hearing a decree dissolving the corporation and providing for the distribution of its assets to its creditors might be entered.

The Surety Company alone was made defendant to the bill and petition. On the same day it entered its appearance and answered admitting the facts as set forth in the bill, and thereupon an order was entered by the court appointing James S. Hopkins receiver, with power to do all acts necessary for the marshalling and distribution of its assets and the closing of its concerns. The order also enjoined further transaction of business by the corporation.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Evans et al. v. Illinois Surety Co., 220 Ill. App. 199.

By the terms of this decree, the court expressly retained jurisdiction over all said parties until final hearing and settlement thereafter of all unfinished business of said Illinois Surety Company and the receivership therein.

· March 1, 1917, an order was entered by the court directing that creditors of the Illinois Surety Company file their claims with the receiver on or before September 1, 1917.

The State of Ohio, appellant, filed with the receiver certain claims Nos. 371, 1080 and 1241. The receiver listed these as exhibit B, and reported them to the court as unliquidated claims, requiring proof. All of these claims were based on certain bonds executed by the Surety Company for principals who were at the time of the execution thereof about to contract for the construction of certain highways in the State of Ohio. The conditions of these bonds were that the principals would enter into the contracts, and would perform each and all the terms, covenants and conditions of the same, including the doing by them of the work contracted for, the payment of materialmen, subcontractors, etc., and that they would hold the State of Ohio harmless from all claims arising by reason of these contracts.

These claims, with others, were referred to a master who reported as to claims Nos. 1080 and 1241, that no breach of the said bonds or any or either of them had been proved. As to claim No. 371, the master found that the contractors for whom the company became surety failed to comply with and carry out the provisions of their contract, and that said default occurred subsequently to the appointment of the receiver; that no breach of said bond occurred prior thereto, or existed at the time of the appointment of said receiver. The master, therefore, recommended that all the claims be disallowed, overruled objections to his report, and the chancellor, upon the hearing, overruling

exceptions by the State of Ohio, confirmed the master's report.

In support of that decree the receiver here contends:

"The decree of the Superior Court of Cook County, Illinois, that declared the Illinois Surety Company insolvent and enjoined it from transacting any further business, and appointed a receiver to take charge of its property and assets, and administer the same under the direction of the court, on the 19th day of April, 1916, canceled all outstanding obligations of the Illinois Surety Company, and that no claim can be maintained for the breach of any bonds that occurred subsequent to that date. In other words, he maintains that the rights and liabilities of creditors and debtors of the Surety Company are fixed and determined at the time of the declared insolvency of the company, and the appointment of the receiver."

In support of this view we are cited to *Carr v. Hamilton,* 129 U. S. 252, where the court said:

"By that act (insolvency and going into liquidation) the company becomes *civiliter mortuus.* Its business is brought to an absolute end, and the policyholders become creditors to an amount equal to the equitable value of their respective policies," etc.

We are also cited to the decisions of the courts of many of the States asserting the same doctrine, and we think, it may be conceded, that the general rule as to life insurance and similar companies is correctly stated in the note to *Fuller v. Wright,* L. R. A. 1917 E. p. 1141, as follows:

"That an adjudication of insolvency of the insurer and the making of an order of liquidation terminated its policies, so that a claim for a loss accruing thereafter was not provable, is in accord with the weight of authority."

The same rule has been held to be the law of the State of New York, applicable not only to insurance corporations, but also as to other companies writing contracts of the same nature as are involved in this

case. *People v. Globe Mut. Life Ins. Co.*, 91 N. Y. 174; *People v. Commercial Alliance Life Ins. Co.*, 154 N. Y. 98; *People v. Metropolitan Surety Co.*, 205 N. Y. 135; *In re Empire State Surety Co.*, 216 N. Y. 273.

It is important, however, to notice that a statute exists in that State which provides, in substance, that the rights and liabilities of corporations and others interested, unless otherwise directed by the court, shall in such cases be fixed as the date of the entry of the order, directing the liquidation of the corporation. See Birdseye, Cummings & Gilbert's Consolidated Laws of New York (2nd Ed.) vol. 4, p. 3907.

Indeed, it would not be a difficult matter to distinguish most of the cases cited from the instant one, for the reason that the decisions are based on statutes of the several States, in whose jurisdictions the proceedings took place. We, therefore, think a safe guide in determining this question can only be found in the statutes of our own State, under which the Illinois Surety Company was organized, and in conformity with which it has been asked that it be dissolved.

It is pointed out that no decree of dissolution has yet been entered; that the decree appointing the receiver does not find that the corporation is insolvent, and that no order has been made distributing the assets of the corporation. No persons interested, other than the corporation, are made parties defendant to the bill, or have been summoned to defend it. Stockholders alone petitioned for the appointment of a receiver. The corporation on the same day entered its appearance, confessed the allegations of the bill, and consented to the appointment. It was, essentially, a voluntary proceeding by the parties to it, stockholders and corporation, without bill or process, as against creditors.

That, independently of the statute, a court of chancery in this State is wholly without jurisdiction to appoint a receiver upon such a bill and petition, as

was filed in this case, has been decided by the Supreme Court in *People v. Weigley,* 155 Ill. 491. It therefore becomes most important to examine the provisions of the statute to ascertain therefrom, if possible, whether the correct rule of law has been applied.

Authority for the organization of the Surety Company is provided for by the Act in force April 17, 1899, Hurd's Rev. St. 1917, pp. 739–741. By the 14th section of that Act (J. & A. ¶ 2556) it is provided:

"Corporations formed under this act shall be subject to all laws of this State governing corporations for pecuniary profit, as provided for in an act entitled, 'An act concerning corporations,' approved April 18, 1872, in force July 1, 1872, and amendments thereto, in force July 1, 1897, and the duties thereof, and shall have the powers thereof, so far as the same are not inconsistent with the provisions of this act. Such companies shall also be subject to the provisions and requirements of an act entitled, 'An act in regard to the dissolution of insurance companies,' approved February 17, 1874, in force July 1, 1874."

Section 1 of said Act of July 1, 1874, provides for involuntary dissolution of insurance companies, upon proceedings brought by the auditor of State. Section 2, Hurd's Rev. St. 1917, p. 1680, ch. 73 (J. & A. ¶ 6682) provides:

"When a majority, in number, or interest, of the members or stockholders of any insurance company incorporated in this State, desire to close its concerns, they may apply by petition to the circuit court of the circuit in which the company is located, setting forth in substance the grounds of their application; and the court, after due notice to all the parties interested, may proceed to hear the matter, and for reasonable cause decree a dissolution of the corporation; and corporations so dissolved shall be deemed and held extinct, in all respects as if their charters had expired by their own limitation, subject, however, to the provisions hereinafter prescribed."

Section 4 of the same Act (J. & A. ¶ 6684) provides:

"Insurance companies whose charters expired by their own limitation, or become forfeited by non-user, or are dissolved by decree of court, or otherwise, shall, nevertheless, be continued bodies corporate for the term of two years after such expiration, forfeiture or dissolution, for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their concerns, to dispose of and convey their property, and divide their capital stock and assets, but not for the purpose of continuing the business for which they were organized."

And by section 5 (J. & A. ¶ 6685) it is provided:

"When the charter of any such insurance company expires, is forfeited or annulled, or the corporation is restrained from the further transaction of its business, or is dissolved, as hereinbefore provided, the court, upon application of the auditor, or of a member, stockholder or creditor, may, at any time before the expiration of said two years, appoint one or more persons to be receivers, to take charge of the estate and effects of the company, including such securities as may be deposited with the Auditor or Treasurer of State, and to collect the debts due, and property belonging to it, with power to prosecute and defend suits in the name of the corporation, or in their own names, to appoint agents under them, and to do all other acts necessary for the collection, marshaling and distributing of the assets of the company, and the closing of its concerns; and when necessary for the final settlement of its unfinished business, the powers of such receiver may be continued as long as the court deems necessary therefor."

By section 6 of said Dissolution Act (J. & A. ¶ 6686) it is provided:

"The receiver shall pay all debts due from the company, if the funds in his hands are sufficient therefor, and if not, he shall distribute the same ratably among the creditors who prove their debts, in such manner as the court may direct.   *   *   *   If there is a balance remaining after the payment of the debts, the receiver shall distribute the same among those who

are justly entitled thereto, as members, stockholders, or otherwise, or their legal representatives.''

By section 9 (J. & A. ¶ 6689) it is provided:

''The mode of summoning parties into court, the rules of practice, course of procedure, and powers of courts, in cases arising under this Act, shall be the same as in ordinary proceedings in equity in this State, except as herein otherwise provided.''

Section 10 of the General Act concerning corpora-tions, in force July 1, 1872, Hurd's Rev. St. 1917, ch. 32, sec. 10, p. 701 (J. & A. ¶ 2427), provides:

''All corporations organized under this law whose powers may have expired by limitation or otherwise, shall continue their corporate capacity during the term of two years, for the purpose only of collecting the debts due said corporation, and selling and conveying the property and effects thereof.''

It should also be noted that section 6 of chapter 32, Hurd's Rev. St. 1917, p. 740 (J. & A. ¶ 2548), provides:

''Every such corporation before commencing business shall, in addition to other requirements of law, deposit with the insurance superintendent, in trust, for the special and sole benefit and security of all its creditors and holders of its obligations and contracts of suretyship, guaranty and indemnity not less than $100,000 of its paid-up capital in bonds of the United States or State or municipal bonds, or in mortgages on improved or productive real estate in this State, being first lien thereon, and the real estate being worth at least twice the amount loaned thereon.''

The bill alleges that such securities at the time of the filing thereof were on deposit with the insurance superintendent of the State of Illinois, and that other assets of the corporation were in the hands of officials of other States under similar statutes.

Section 1 of the said Act (J. & A. ¶ 6681), in regard to the dissolution of insurance companies, has been construed with reference to the powers of a receiver appointed under that section in *Republic Life Ins. Co. v. Swigert,* 135 Ill. 150.

The opinion points out that sections 5 and 6 of the act, providing for the appointment of receivers, and stating their duties, do not increase the powers given to receivers according to the usual course of practice, and that these two sections contain all the powers that are expressly given to the receiver by the statute. It says:

"He is ordinarily, in respect to his title and in respect to the litigations in which he may engage, merely the representative of the owners of the property submitted to his control."

It is difficult to understand how such a receiver, with powers as there defined, could terminate the contracts of the company as of the date of his appointment, without the consent or acquiescence of the other parties to the contract; and we believe no case will be found, holding that the mere appointment of a receiver, would have the effect of terminating the contracts of the company.

Moreover, section 10 of chapter 32, above cited, has been construed in *Life Ass'n of America v. Fassett*, 102 Ill. 315, and the effect of that provision continuing the life of the corporation after the time of its dissolution construed. The court said:

" * * * With respect to the effects of a defunct corporation, the legislature of this and most, if not all, the other States of the union, have, by appropriate legislative enactments, provided for just and equitable distribution of their assets in cases of insolvency, or sudden dissolution from any cause; and our own act on the subject contains a provision which in express terms extends their corporate existence 2 years after the date of their dissolution for such purpose. * * * From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State, at least, so far as domestic corporations are concerned, that upon their dissolution, however, that may be effected, they shall, nevertheless, be regarded as still existing for the purpose of settling

up their affairs, and having their property applied for the payment of their just debts.''

See also *Commercial Loan & Trust Co. v. Mallers,* 242 Ill. 50; *Malicki v. Bulkley,* 206 Ill. 249.

Again it has also been held in this State that insolvency of a corporation, even if established, does not discharge the company from its liabilities then existing or which may thereafter accrue. In *Chicago Fire Place Co. v. Tait,* 58 Ill. App. 293, this court said in a case where a receiver has been appointed for an insolvent book company:

''The insolvency of the book company did not discharge it from its liabilities existing at the time the receiver was appointed, nor from such as might thereafter accrue.''

And in the case of *Chemical Nat. Bank of Chicago v. Hartford Deposit Co.,* 156 Ill. 522, in a case where the court had before it the liability of an insolvent lessee, for which a receiver had been appointed, the court said:

''It will be observed that nothing was done by the lessor to terminate the lease. The receiver gave notice of his election to terminate the lease on July 31, so far as he, as receiver, was concerned. This action, however, on his part, had no effect on the lease as respects its validity or binding force between the lessor and the Chemical National Bank. There was a contract in writing existing between these parties, which fixed their obligations and determined their rights and liabilities, and the receiver was clothed with no power to do any act which would impair the obligation of that contract.''

This case was affirmed in *Chemical Nat. Bank of Chicago v. Hartford Deposit Co.,* 161 U. S. 1.

In *City Ins. Co. of Providence v. Commercial Bank of Bristol,* 68 Ill. 348, it was held, with respect to a foreign corporation, that though extinct and dissolved, the obligations of its contracts survive.

It has also been decided in this State that the death

of an individual surety does not cancel his liability, but that, on the contrary, his estate is liable.   See *Rapp's Estate v. Phœnix Ins. Co.,* 113 Ill. 390.

We think the statutes and decisions cited are inconsistent with the contention of the receiver and the rule applied by the chancellor.

The provisions of section 12 (J. & A. ¶ 2429), that dissolution "shall not take away or impair any remedy given  *  *  *  for any liabilities incurred previous to its dissolution"; of said section 4, that, notwithstanding dissolution, corporations shall continue 2 years, "but not for the purpose of continuing the business for which they were organized"; of said section 6, requiring a deposit with the superintendent of insurance "for the special and sole benefit and security of all its creditors and holders of its obligations and contracts of suretyship, guaranty and indemnity," seem to be wholly ·inconsistent with the theory that the filing of a bill, appointment of a receiver and injunction, such as was provided for in the order entered in this case, should cancel all contracts outstanding on which causes of action had not then accrued.   No such narrow meaning can be given to the words "creditors" or "liabilities," as such a construction would seem to require.   *Choteau v. Jones,* 11 Ill. 300; *Parker v. Hull,* 46 Ill. App. 471; *Cochran v. United States,* 157 U. S. 296; *Home Ins. Co. of New York v. Peoria & P. U. Ry. Co.,* 178 Ill. 70.

But we are cited to certain Illinois cases which it is said support the contention of the receiver; to *Hynes v. Illinois Trust & Savings Bank,* 226 Ill. 95, where the court said:

"The rights and liabilities of the creditors and debtors of the insolvent corporation are fixed and determined at the time of the appointment of the receiver."

To *Gillett v. Chicago Title & Trust Co.,* 230 Ill. 373, where the court said:

"The rights of all the creditors are fixed when the court takes jurisdiction of the property."

To *Blanchard Bro. & Lane v. S. G. Gay Co.*, 289 Ill. 421, where the court said:

"Appointing a receiver to take possession of the assets of a corporation and to distribute them is tantamount to dissolving the corporation by decree in equity."

An examination of these cases discloses that the issues therein were quite different from those involved here. All these suits were brought by creditors under section 25 of the General Incorporation Act (J. & A. ¶ 2442). In the *Hynes* case the question was whether a creditor, who held bonds of the company at the time the receiver was appointed and was also liable for unpaid stock, could transfer the bonds so as to avoid set-off, and the court held the creditor could not do this. The language quoted was used in that connection. In *Gillett v. Chicago Title & Trust Co., supra,* the general rule was announced that:

"Where the assets of a corporation, including stock liability, are less than its indebtedness, and it passes into the control of a court of chancery for the administration of its assets and for dissolution, the general rule is that interest is not allowed on claims against the funds. The delay in distribution is the act of the law."

It was pointed out that under the circumstances there shown to exist, the allowance of interest would be inequitable as between the creditors. In *Blanchard Bro. & Lane v. S. G. Gay Co., supra,* it was held that parties claiming the property of a corporation under a receiver appointed, upon a bill filed by a stockholder, where the allegations of the bill were insufficient to confer jurisdiction on the court, could not hold the property as against creditors who had filed a bill under section 25, and who prayed to have the former proceedings set aside.

It is apparent that the court in these cases was con-

sidering proceedings which were in the nature of creditors' bills, in which the filing of the bill and the appointment of a receiver have usually been held to be equivalent to an equitable levy by the creditors, and the language used would not be applicable to proceedings of the kind here under consideration. *Pennsylvania Steel Co. v. New York City Ry. Co.*, 198 Fed. 740; *William Filene's Sons Co. v. Weed*, 245 U. S. 597. We think the last named case states the law which should control, as follows:

"When a statutory system is administered, the only question for the courts is what the statutes prescribe. But when the courts without statute take possession of all the assets of a corporation under a bill like the present, and so make it impossible to collect debts except from the court's hands, they have no warrant for excluding creditors, or for introducing supposed equities, other than those determined by the contracts that the debtor was content to make and the creditors to accept.

"In order to make a distribution possible, they must, of necessity, limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy, so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made."

We realize that a time must be fixed for the distribution of assets, if not by statute then by order of the court, and that when so fixed contingent claims must necessarily be excluded, but we think under these statutes such an order may not fix a time for exclusion at less than 2 years from and after the date of the dissolution of the corporation. We think that provision of the statute analogous to provisions of the Insolvency and Administration Acts which prescribe the time within which claims must be filed against the estate. The rules applicable to proof of contingent claims in such cases have been often stated by the courts. *Chicago Title & Trust Co. v. Fine Arts Bldg.*

*Corporation,* 288 Ill. 142; *Suppiger v. Gruas,* 137 Ill. 216; *Snydacker v. Swan Land & Cattle Co.,* 154 Ill. 220; *Joliet Nat. Bank v. O'Donnell,* 165 Ill. 32; *Hoyle v. Scudder,* 32 Mo. App. 372.

As to claim No. 371 of the State of Ohio, we think under the proofs the same should have been allowed in the sum of $3,281.35. As to claims Nos. 1080 and 1241, an examination of the evidence submitted by the State of Ohio indicates that these were prematurely filed.

The decree of the superior court will therefore be reversed and the cause remanded with directions to allow said claim No. 371, in the sum of $3,281.35, and for other proceedings consistent with the views herein expressed.

*Reversed and remanded with directions.*

BARNES, P. J., and GRIDLEY, J., concur.